UNITED STATES BANKRUPTCY COURT

DISTRICT OF IDAHO

| | | |
|---|---|---|
| IN RE | ) | |
| | ) | |
| MATTHEW T. STINEBAUGH, | ) | Case No. 13-20447-TLM |
| TAMI M. STINEBAUGH, | ) | |
| | ) | |
| Debtors. | ) | Chapter 13 |
| _____ | ) | |

**MEMORANDUM OF DECISION**
_____

**BACKGROUND AND FACTS**

Matthew and Tami Stinebaugh ("Debtors") filed the petition commencing this chapter 13 case on April 29, 2013.[1] Debtors' filed their schedules on May 22, 2013. Schedule A listed two parcels of residential real property: one at 504 S. Blaine St., Moscow, ID and the other at 586 Hathaway St., Moscow, ID. Doc. No. 22 at 3. A homestead exemption was claimed on the Hathaway St. property. *Id.* at 9 (sched. C).[2] Debtors were acquiring the Hathaway St. property through an

---

[1] Unless otherwise indicated, all statutory references are to the Bankruptcy Code, Title 11 U.S. Code §§ 101–1532, and all rule citations are to the Federal Rules of Bankruptcy Procedure.

[2] The petition indicated that Mr. Stinebaugh lived at 618 Harrison in Moscow, and Mrs. Stinebaugh lived at the Hathaway St. property. Doc. No. 1. Debtors filed separate schedules J (current expenditures) noting separate households. Doc. No. 22 at 28–30. The schedules did not clarify the nature of the Harrison property, though presumably it is a rental as no ownership interest in it is shown on schedule A or elsewhere in the file.

MEMORANDUM OF DECISION - 1

installment sales contract. The Blaine St. property was subject to two deeds of trust, both owed to Bank of America. *Id.* at 12 (sched. D).

In their chapter 13 plan filed on May 22, 2013, Debtors proposed to cure the default on the installment land contract related to the Hathaway St. property through payments to be made to and distributed by Trustee, and for Debtors to make the regular contract payments accruing post-bankruptcy directly to such creditor. Doc. No. 27 at 6.

Debtors' plan further proposed to "sell, in a commercially reasonable manner, the residential real property located at 504 S. Blaine Street, Moscow, Idaho, which is currently a rental." *Id.* at 5. They proposed, from the expected proceeds, to pay the two deed of trust obligations securing Bank of America[3] and the costs of sale including a Realtor's fee, then to distribute an estimated $17,600 to the Internal Revenue Service ("IRS") as partial payment on its secured claim. *Id.* at 5–6.[4]

The plan proposed that the chapter 13 trustee, C. Barry Zimmerman ("Trustee") would "[f]rom the payments received . . . make disbursements to

---

[3] A later objection to confirmation was filed by The Bank of New York Mellon as a junior secured creditor on the Blaine St. property. That objection, after the sale of the property discussed below, was "withdrawn" in a document noting that "the loan has been paid off." Doc. No. 71.

[4] While this treatment is under ¶ 5.2 of the plan, which contemplates payments through Trustee, it is evident from the balance of the record that these payments were to be made by, and in fact were ultimately made by, Debtors directly.

holders of allowed claims entitled to administrative and priority status . . . in deferred cash payments" and would also make the payments to those secured creditors whose claims were "modified" under the plan. These payments would include the balance of the amounts owed the IRS on its secured claim. *Id.* at 5–6. The plan also provided for "Fees to the Trustee as provided by 28 U.S.C. § 586." *Id.* at 3.

Trustee objected to confirmation of this plan, as did several creditors. On July 2, Debtors withdrew that initial plan.

Two weeks later, Debtors filed a motion to approve sale of the Blaine St. property. Doc. No. 45.[5] This motion was co-signed by Trustee. It proposed sale of that property for $158,500 with the net proceeds paying off the first and second deeds of trust to Bank of America and the balance going to the IRS on its tax liens. Debtors and Trustee also jointly applied for approval of the employment of a Realtor in connection with this sale. Doc. No. 44. Neither request was contested or opposed, and they were approved. Doc. Nos. 58, 59.

On August 30, an amended chapter 13 plan was filed. Doc. No. 75 ("Plan"). It no longer addressed Bank of America[6] but did provide for the remaining secured claim of the IRS. *Id.* at 5. Treatment of the contract creditor

---

[5] The motion cited § 363(f). *See also* § 1303.

[6] The Plan noted that the Blaine St. property had been sold and Bank of America paid in full, and the IRS paid $16,081.73. *Id.* at 6.

MEMORANDUM OF DECISION - 3

on the Hathaway St. property remained the same as in the first plan (*i.e.*, default cured through payments by Trustee and ongoing payments made directly by Debtors, *see id.* at 6), as did the language related to Trustee's fees.

On September 23, Trustee filed a motion to dismiss the case under § 1307(c) based on an asserted default in payments of $4,308.00, *see* Doc. No. 83, and an objection to confirmation, Doc. No. 82 ("Objection"). The Objection noted the delinquency in Plan payments, and also objected because the Plan "fails to account for the Trustee's statutory fees affiliated with the sale of the debtors' real property." *Id.* at 2.

The matter came on for hearing on October 8. The Court noted that Debtors had filed a pre-hearing brief related to the question of Trustee's claim to fees, and therefore required Trustee to file a responsive brief, which was filed on October 21. The Court allowed Debtors to file a reply brief, which was filed on October 29, after which the issues were taken under advisement.[7]

**DISCUSSION AND DISPOSITION**

The Plan cannot be confirmed until the issue of payment defaults is resolved.[8] However, the parties also request resolution of the issue of whether

---

[7] This Decision constitutes the Court's findings and conclusions on the contested matter. Rules 7052, 9014.

[8] Debtors' briefing suggests that the delinquency has been cured. Trustee's briefing suggests it is not. *See* discussion *infra*. The Court concludes the parties can clarify that issue once the question of Trustee's fees is resolved by this Decision.

MEMORANDUM OF DECISION - 4

Trustee is entitled to receive a statutory fee on the disbursements that were made to Bank of America and the IRS from the pre-confirmation sale of the Blaine St. property.

Trustee's post-hearing responsive brief relies on two cases. One case, *In re Seamons*, 131 B.R. 459 (Bankr. D. Idaho 1991), does not support the position he advocates.[9] The other, *In re Fulkrod*, 126 B.R. 584 (9th Cir. BAP 1991), is not fully analyzed and is not shown to provide any real support for Trustee's argument.[10]

*Giesbrecht v. Fitzgerald (In re Giesbrecht)*, 429 B.R. 682 (9th Cir. BAP 2010), recognized that the structure of chapter 13's statutory provisions does not require that all payments to creditors be made through a chapter 13 trustee, and so allows a chapter 13 debtor to directly pay a creditor. *Id.* at 689–90. But it held the bankruptcy court has discretion to determine when direct payments may not be appropriate. *Id.* at 690–91. In *Giesbrecht*, the BAP remanded the case to the bankruptcy court because there were inadequate findings reflecting the proper

---

[9] In this 1991 case, the Court ruled that whether a chapter 12 debtor could make a direct payment of an impaired claim without incurring a trustee's fee was a question committed to the Court's sound discretion, which discretion would be informed by consideration of several factors. The direct payment, *sans* trustee's fee, was there allowed.

[10] Debtors' initial brief relied on *In re Roberts*, 226 B.R. 240 (Bankr. D. Idaho 1998). That decision denied Trustee (there also Mr. Zimmerman) fees under 28 U.S.C. § 586 calculated in regard to the proceeds of the Roberts' sale of collateral and direct distribution of those proceeds to secured creditors. Trustee's responsive brief did not address *Roberts* at all. Though supportive, the Court need not rely on *Roberts* as the basis for today's Decision as more recent case law better informs this question.

MEMORANDUM OF DECISION - 5

exercise of that discretion.[11]

*Giesbrecht* was based in large part on the decision in *Cohen v. Lopez (In re Lopez)*, 372 B.R. 40 (9th Cir. BAP 2007), *aff'd* 550 F.3d 1202 (9th Cir. 2008).[12] In *Lopez*, the debtor's plan permitted him to directly make ongoing "maintenance payments" to the creditor secured by a deed of trust on his residence while simultaneously allowing him to pay the prepetition arrears to the same creditor via the trustee. The bankruptcy court confirmed the plan. The trustee appealed, contending he should disburse the maintenance payments as well as the default cure payments, and calculate his fees under 28 U.S.C. § 586(e)(2) on all such amounts. *Lopez* rejected the trustee's contentions, and affirmed.

The *Lopez* decision is lengthy, detailed, nuanced and—as the Court of Appeals noted—"well-reasoned." Not all aspects need be addressed in today's Decision. The Court will note, preliminarily, that *Lopez* focused not only on the statutory provision related to compensation of standing chapter 12 and 13 trustees, 28 U.S.C. § 586(e)(2), but closely on the Code provisions that create differences in plans under chapter 12 and 13. 372 B.R. at 44–47. Thus, *Lopez* determined the

---

[11] To the extent Trustee does or would argue as a threshold issue in the instant case that Debtors' direct payment of Bank of America and the IRS on their secured claims is inappropriate or should not be allowed by the Court in the exercise of its sound discretion, the Court finds he has not sustained that contention, particularly in that he acquiesced in that process and endorsed the motions.

[12] The Court of Appeals adopted the "well-reasoned" decision of the BAP as its own. Thus, as the BAP did in *Giesbrecht*, 429 B.R. at 685 n.1, this Court will cite to the BAP's *Lopez* decision.

MEMORANDUM OF DECISION - 6

decisions in the *Fulkrod* cases involving chapter 12 do not directly govern chapter 13 situations. *Id.* (discussing *Fulkrod v. Barmettler (In re Fulkrod)*, 126 B.R. 584 (9th Cir. BAP 1991), *aff'd sub. nom. Fulkrod v. Savage (In re Fulkrod)*, 973 F.2d 801 (9th Cir. 1992)).

The length of the analysis in *Lopez* evinces that "this is a difficult issue, with arguments on both sides[.]" *Id.* at 50. At bottom, however, *Lopez* validated the cure of prepetition defaults to a secured creditor by a chapter 13 debtor's plan payments disbursed by the trustee and on which the trustee would calculate a fee, but with the post-petition ongoing payments made directly by the debtor, bypassing the trustee and the trustee's fee. That specific scenario is not the issue in the present case.[13]

Here, the question instead involves fees calculated on Debtors' sale of the Blaine St. property during the case but prior to confirmation and Debtors' direct payment of secured creditors' claims from the sales proceeds. While *Lopez* did not involve that situation, it commented:

> Similarly, many Chapter 13 debtors choose to refinance or sell their homes and pay off their plans in full. *See, e.g., Sunahara v. Buchard (In re Sunahara)*, 326 B.R. 768 (9th Cir. BAP 2005). In such cases, unsecured creditors are paid through the plan, while payments to creditors secured by the asset sold or refinanced are paid directly by the escrow agent. Under the trustee's view, the escrow agent should pay the money directly to the trustee, who would then forward the

---

[13] Debtors' proposed treatment of the creditor secured on the Hathaway St. property is not challenged.

MEMORANDUM OF DECISION - 7

> amounts to the secured creditors, taking a fee—in this instance, 10%—in the process.

372 B.R. at 50. *Lopez* did not endorse that trustee's view and, on the whole, does not support the idea that the trustee could properly calculate or collect his fees on any such direct distributions to creditors by debtors or the escrow company from the sale or refinance of the real property. While *Lopez* does not directly address the circumstance presented in the present case, the Court finds that it is sufficiently instructive.

Additionally, a respected treatise concludes that while courts take differing analytical approaches to the issue, most conclude chapter 13 trustees should not receive fees based on payments debtors make directly. 8 Collier on Bankruptcy ¶ 1302.05[1][c] (16th ed., Alan N. Resnick and Henry J. Sommer, eds.). It further notes that changes made to 28 U.S.C. § 586(e)(2) in 1986, direct the trustee to collect the percentage fee "from all payments *received by such individual* under plans." *Id.* (emphasis added). Thus, "it seems clear that the language enacted in 1986 does not permit the trustee to collect the percentage fee from payments which are not actually received by him or her because they are paid directly to creditors." *Id.*

The Court concludes that Trustee has not adequately supported his contentions and, under the facts of this case, his fees under 28 U.S.C. § 586(e)(2) do not include fees calculated on the distributions Debtors made from the proceeds

MEMORANDUM OF DECISION - 8

of sale of the Blaine St. property including the payments to Bank of America and the IRS as secured creditors.[14]

**CONCLUSION**

Upon the foregoing, Trustee's Objection on the basis of lack of payment of his fees will be overruled.

Trustee's Objections on the grounds of failure to provide a copy of the closing statement, and based the stay relief motions filed by two other secured creditors, appear to have been resolved.  *See* Debtors' brief, Doc. No. 89 at 1–2; Trustee's brief, Doc. No. 91 at 1–2.

Trustee's remaining Objection, based on delinquency in plan payments, was rebutted by Debtor, *see* Doc. Nos. 89 at 1 and 92 at 4, but Trustee contends it is outstanding, *see* Doc. No. 91 at 2.  If that delinquency has been cured, the parties shall cooperate on the submission of a form of confirmation order.  If not cured, or if there are other issues that must be addressed, either party may place

---

[14]  The fact Trustee was a "co-signor" of the sale motion is not a basis for a contrary conclusion.  The pleadings were all prepared by and advanced by Debtors' counsel; the sale was negotiated by Debtors' through a broker they located and sought (again with Trustee co-signature) to be employed; and the sale was closed by Debtors and the broker.  Though Trustee accommodated Debtors' requests, his lack of involvement is illustrated by his request on September 23 that he be provided a copy of the title company's closing statement.  *See* Objection at 2.  Debtors thereafter provided him with the August 16 closing statement.  *See* Doc. No. 89 at 1, 6–8.

MEMORANDUM OF DECISION - 9

the matter back on the Court's calendar.[15]

DATED: October 30, 2013

*signature*

TERRY L. MYERS
CHIEF U. S. BANKRUPTCY JUDGE

---

[15] The Court notes Debtors' counsel seeks his fees on a basis that requires submission of an application. *See* Plan, Doc. No. 75 at 3; *see also* LBR 2016.1 (noting alternative of seeking a fee under a Model Retention Agreement). Such a submission must be made, but will not require a hearing unless objection is raised after notice.

MEMORANDUM OF DECISION - 10